E-FILED
Friday, 18 July, 2008 03:05:30 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| VICTORIA D. NADELL ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of ) <br> Social Security ) <br> ) <br> Defendant. ) | No. 06-CV-4062 |

## O P I N I O N  A N D  O R D E R

Before the Court is Plaintiff's Motion for Summary Judgment [Doc. 15] and Defendant's Motion for Summary Judgment [Doc. 16] and accompanying Memorandum [Doc. 17, Ex 1]. For the following reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

### BACKGROUND

Plaintiff filed a claim for Supplemental Security Income (SSI) on February 25, 2005 and alleged an onset date of disability of December 20, 2004. (R. at 106.) Her claim was denied so she filed a Request for Reconsideration which was also denied on August 26, 2005. (R. at 75-78.) Plaintiff then filed a Request for Hearing by an Administrative Law Judge (ALJ), which was subsequently held on April 20, 2006. Plaintiff and Vocational Expert (VE) Ronald Malik both testified at the hearing. The ALJ ruled against Plaintiff on June 23, 2006. On August 30, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision on this matter. 20. C.F.R. §§ 416.1455, 416.1481 (1986).

Plaintiff's employment history is sparse. She dropped out of high school in the eleventh grade and worked briefly as a cashier, dish washer, and prep cook at a fast food restaurant. (R. at

35-39.) However, none of these jobs generated much income or were performed for a substantial period of time. (R. at 109-112.)

There is limited evidence that Plaintiff suffers from mental impairments. Plaintiff was diagnosed with bipolar disorder, although medical records indicate this disorder could be kept under control through the use of medication. (R. at 222.) Plaintiff claims she suffers from depression, and has trouble concentrating and staying on task. However, Plaintiff has not provided any medical evidence to support these allegations,[1] and the only medical evidence noted by either party demonstrates she did not suffer from any mental impairments. (R. at 226.)

Instead, the medical record demonstrates that Plaintiff suffers primarily from physical impairments. Plaintiff suffers from hyperthyroidism,[2] chronic obstructive pulmonary disease, and a degenerative disc disease of the cervical spine. In December 2004, Plaintiff fell and was

---

[1] Plaintiff stated at her hearing that she had an appointment with a Dr. Lawton, a mental health professional, scheduled four months after the hearing. Plaintiff argues this Court should remand because Dr. Lawton has now had an opportunity to develop a treating relationship with Plaintiff. Specifically, Plaintiff would like this Court to remand so the ALJ can consider Dr. Lawton's findings on Plaintiff's depression, bipolar disorder, and anxiety. However, Plaintiff has not provided these findings. Under 42 U.S.C. § 405(g), a remand is warranted when new evidence becomes available, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Plaintiff has not informed this Court of any of Dr. Lawton's actual findings. This Court has no basis for determining whether Dr. Lawton's findings would be material under § 405(g), and cannot remand on a purely speculative basis.

[2] Plaintiff refers in her brief to her "hypothyroidism." [Doc. 15 at 6.] However, the ALJ and medical record refer to Plaintiff's "hyperthyroidism." The two should not be confused. Hypothyroidism is defined as "[d]iminished production of thyroid hormone, leading to clinical manifestations of thyroid insufficiency, including low metabolic rate, tendency to weight gain, somnolence and sometimes myxedema." Stedman's Medical Dictionary, hypothyroidism (27th ed. 2000). Hyperthyroidism, however, is defined as "[a]n abnormality of the thyroid gland in which secretion of thyroid hormone is usually increased and is no longer under regulatory control of hypothalamic-pituitary centers; [it is] characterized by a hypermetabolic state, usually with weight loss,… [and is] often associated with exophthalmos (Graves disease)." Stedman's Medical Dictionary, hyperthyroidism (27th ed. 2000).

2

also diagnosed with a cervical strain. However, X-rays showed no evidence of a fracture. (R. at 188.)

In March 2005, shortly after Plaintiff applied for disability benefits, Dr. Wang, Plaintiff's treating physician, reported that Plaintiff's hyperthyroidism and bipolar disorder were under reasonable control, despite Plaintiff's non-compliance. According to Dr. Wang, Plaintiff seemed "reasonably functional" and he was "not really sure why she [was] applying for disability."[3] (R. at 222.)

The most extensive report regarding Plaintiff's impairments was provided by Dr. Rabinowitz in June 2005. (R. at 223-227.) Plaintiff informed the doctor that she had a history of chronic bronchitis and shortness of breath; she smoked two packs of cigarettes a day for 28 years, but had reduced her smoking to half a pack a day; and also reported abusing cocaine earlier in life. Dr. Rabinowitz noted Plaintiff used a cane, but needed no assistive device to walk up to fifty feet. She had a normal range of motion in her joints and spine, except for her right knee, which was increased in size and had a mildly reduced range of motion. The doctor observed that Plaintiff had normal neurological functioning in her arms and legs, including normal sensory responses, reflexes, and motor function, and her strength was normal throughout all muscle groups. (R. at 225-227.) Dr. Rabinowitz's finally determined Plaintiff had an intact tandem gait (R. at 226), but also stated that she walked with a right antalgic gait.[4] (R. at 224.)

---

[3] Plaintiff argues that both this Court and the ALJ should not consider Dr. Wang's report because, even though it was filed three months after she applied for disability, a year and a half passed between when the report was filed and when she finally received a hearing. Plaintiff fails to allege any real change in her condition in the intervening period which would give reason to doubt Dr. Wang's opinion.

[4] An antalgic gait is "a characteristic gait resulting from pain on weightbearing in which the stance phase of the gait is shortened on the affected side." Stedman's Medical Dictionary, antalgic gait (27th ed. 2000).

In January and February 2006, Dr. Hassan began treating Plaintiff's abnormal thyroid hormone levels and Plaintiff was also diagnosed with Grave's disease. During that period, Plaintiff was admitted to Trinity Hospital to have her thyroid gland surgically removed. (R. 408-502.) Her body tolerated the surgery and she was discharged after one day. (R. 418.)

Plaintiff's obesity is one of the main issues discussed *infra*. She is approximately five feet, eleven inches tall (R. at 224; R. at 35) and throughout the relevant time period has weighed between 223 and 258 lbs. [Doc. 15 at 4]. Plaintiff alleges she suffers from severe shortness of breath and specifically points to a notation made when she entered the hospital for her thyroid surgery that she was significantly short of breath. While it is noted in the medical record that Plaintiff's impairments would improve if she quit smoking (R. at 503), she presents no medical evidence of being severely impaired by her shortness of breath.

At the hearing before the ALJ, Plaintiff made subjective statements about the severity of her pain and other impairments. By comparing these statements to the objective medical record, the ALJ determined Plaintiff's testimony lacked credibility. Plaintiff stated she sleeps for only two hours a night because of pain, leaves the home only once a month to visit her doctor, and only bathes when she receives assistance from friends. The ALJ found it improbable that she could survive for an extended period on only two hours of sleep and noted that such an extreme degree of limitation was not supported by the medical record. Specifically, the ALJ found there was evidence in the record that Plaintiff occasionally drove and talked on the phone and no medical professional reported that Plaintiff required such extreme restrictions.

At the hearing, the VE was asked about a hypothetical individual with Plaintiff's age, education, experience, an ability to perform light work that did not require climbing ladders, ropes or scaffolds, an ability to occasionally climb ramps or stairs, occasional balancing

4

stooping, kneeling, crouching or crawling, who could only work in an environment that was free from concentrated exposure to respiratory irritants, and who could only perform simple, routine tasks. (R. at 57-58.) According to the VE, there were approximately 16,000 jobs in the economy which accommodated these limitations, including work as a retail sale attendant, ticket checker, and account clerk. (R. at 58.)

## LEGAL STANDARD

Disability insurance benefits are available to plaintiffs who can establish 'disability' under the terms of the Social Security Act. Brewer v. Chater, 103 F.3d 1384 (7th Cir. 1997). Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining Plaintiff's eligibility. See 20 C.F.R. §§ 494.1566, 416.966 (1986). An individual is disabled if she has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is also disabled if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. Id. § 423(d)(2)(A).

The ALJ uses a five-step sequential process to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation ends if, at any step of the process, the ALJ finds that the claimant is not disabled. Id. The ALJ must inquire: (1) whether the claimant is working in any substantial gainful activity; (2) whether the claimant's impairment is severe; (3) whether the impairment meets or equals a listed impairment in 20 C.F.R., pt. 404, subpt. P, App. 1; (4) whether the claimant is able to perform her past relevant work; and (5) whether the claimant's age, education, and past relevant work experience in reference to her residual functional

5

capacity, enable her to do other work.  Id. § 404.1520(a)(4)(i)-(v).  The burden of proof is on Plaintiff through step four; the burden shifts to the Commissioner only at step five.  Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000).  At step five of the disability analysis, the Commissioner has the burden of proving the plaintiff has the ability to engage in other work existing in significant numbers in the national economy.  Id.

This Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with its own assessment of the evidence.  This review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support his findings.  Scivally v. Sullivan, 966 F.2d 1070 (7th Cir. 1992).  In making his decision, the ALJ must articulate his analysis of the evidence so the appellate court can trace his path of reasoning.  Diaz v. Chater, 55 F.3d 300 (7th Cir. 1995).  In determining whether the ALJ's findings are supported by substantial evidence, this Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Conditions such as obesity, even if they merely aggravate disability, must still be considered for their incremental effect on the disability.  Gentle v. Barnhart, 430 F.3d 865 (7th Cir. 2005).  An ALJ's credibility determination is given special deference and will not be reversed unless it is patently wrong.  Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 2004); see e.g. Sienkiewicz v. Barnhart, 409 F.3d 798 (7th Cir. 2005) (upholding ALJ's finding that plaintiff's complaints of pain were not supported by the record).  When an ALJ determines a claimant's testimony is not completely credible, he is not required to accept the testimony in its entirety. Sienkiewicz, 409 F.3d at 798.

**THE ALJ'S DECISION**

The ALJ found that Plaintiff was not disabled for purposes of Section 216(i) and 223 of the Social Security Act. (R. at 31.) In making this decision, the ALJ performed the five step analysis described *supra*. At step one, the ALJ recognized that Plaintiff had not engaged in a substantial gainful activity at any time relevant to his decision. (R. at 15.) At step two, the ALJ concluded that Plaintiff suffered from four severe impairments: hyperthyroidism, chronic obstructive pulmonary disease, degenerative disc disease of the cervical spine and bipolar disorder. At step three, however, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or was medically equivalent to one of the listed impairments in the regulations. (R. at 16-18.)

At step four, the ALJ found Plaintiff had a residual functional capacity (RFC) to perform light work, including simple routine tasks with some additional limitations. He also concluded Plaintiff had no past relevant work. (R. at 21.) As a result, Plaintiff met her burden, which then shifted to the Commissioner to prove that Plaintiff was capable of performing work in the national economy. At step five, the ALJ relied on the Medical Vocational Guidelines and testimony to conclude Plaintiff was capable of performing a significant number of jobs in the national economy. (R. at 21-22.)

**ANALYSIS**

Plaintiff raises three issues for review: (1) whether the ALJ erred by failing to consider Plaintiff's obesity along with her other impairments; (2) whether the ALJ's findings regarding the severity of Plaintiff's limitations and her residual functional capacity lack medical support and are not supported by substantial evidence; and (3) whether the ALJ erred by raising

Plaintiff's non-compliance with prescribed treatment and failing to follow analysis mandated by the regulations for assessing non-compliance. This Court will address each issue in turn.

**1. Plaintiff's Obesity**

Plaintiff first alleges the ALJ failed to consider Plaintiff's obesity.[5] Conditions such as obesity must not be confused with disabilities, because it is entirely possible for a person to be obese and still able to perform full-time work. Gentle, 430 F.3d at 868. While conditions may be the causal effect of a disability, such a relation must be shown. Id.

Plaintiff cites Mendez v. Barnhart, 439 F.3d 360 (7th Cir. 2006), and argues that an ALJ must consider obesity in combination with all other impairments. In Mendez, the Seventh Circuit determined that the ALJ "failed to consider the totality of [plaintiff's] impairments, as he was required to do." Id. at 363. The plaintiff's impairments included low IQ, depression, and obesity. The Seventh Circuit also expressed concern that the ALJ apparently did not consider whether the plaintiff's "difficulty in getting around would interact with her cognitive limitations and her psychiatric condition to make her incapable of complying with even simple workplace directives." Mendez, 439 F.3d at 363. The Court found the ALJ failed to articulate a reasoned basis for the denial of benefits, and vacated and remanded the case. Id.

---

[5] It is not the province of the Court to diagnose plaintiffs. For reference however, the Court notes that Plaintiff appears to be obese under the Body Mass Index (BMI) calculation. Social Security Ruling 02-01p, 2002 SSR LEXIS 1. BMI is the ratio of a person's weight in kilograms to the square of his height in meters [$kg/m^2$]. Id. at *4; see also Centers for Disease Control and Prevention (CDC), Body Mass Index: Introduction, http://www.cdc.gov/nccdphp/dnpa/bmi/ (last visited July 7, 2008). BMI provides "a reliable indicator of body fatness for most people and is used to screen for weight categories that may lead to health problems." CDC, What is BMI?, http://www.cdc.gov/nccdphp/dnpa/bmi/adult_BMI/about_adult_BMI.htm#Definition (last visited July 7, 2008). Plaintiff's BMI is between 31.1 and 36; a 'normal' BMI is between 18.5 and 24.9; an 'overweight' BMI is between 25.0 and 29.9; a BMI over 30.0 is considered 'obese.' See CDC, Defining Overweight and Obesity, http://www.cdc.gov/nccdphp/dnpa/obesity/defining.htm (last visited July 7, 2008).

In the case at bar, Plaintiff failed to allege at the hearing that her symptoms were exacerbated by her obesity.  [Doc. 17-2 at 11.]  Even assuming *arguendo* that Plaintiff is obese, the ALJ still did not abuse his discretion.  The ALJ did consider Plaintiff's physical and cognitive limitations and relied upon the medical evidence to determine that Plaintiff did not qualify for disability benefits.  While the ALJ did not expressly mention obesity in his decision, he relied on the medical opinions of Dr. Wang and Dr. Rabinowitz and therefore, indirectly took Plaintiff's obesity into account.

Plaintiff specifically argues that the ALJ failed to take into account the disability report created at the time she applied for the disability benefits, which noted Plaintiff was obese and had difficulty standing and walking. (Tr. 121.)  However, the disability report was created before Dr. Wang and Dr. Rabinowitz medically examined Plaintiff for the Illinois Disability Determination Services.  The ALJ properly considered the more recent reports from unbiased sources more credible than the previous report.  Dr. Wang, in his letter dated March 15, 2005, noted that Plaintiff "seems reasonably functional and I am not really sure why she is applying for disability."  (Tr. 222.)  Dr. Rabinowitz noted that Plaintiff was obese based on her weight, but did not note any physical limitations from obesity, and in his physical condition analysis reported that Plaintiff was able to walk distances of fifty feet without assistance.  (Tr. 223.)   While Plaintiff testified at the hearing that her weight increased, she presented no medical evidence proffering any additional physical limitations since Dr. Rabinowitz's examination.  (Tr. 35.)  The ALJ reasonably relied on the evidence in the record when he denied Plaintiff's request.

Furthermore, the ALJ's failure to expressly address Plaintiff's obesity is harmless error because the ALJ adopted the limitations set by Dr. Rabinowitz, who based his recommendations on Plaintiff's condition, including her obesity.  See Prochaska, 454 F.3d at 735 (ALJ not required

9

to expressly address obesity as claimant failed to demonstrate how her obesity specifically impaired her physical abilities). It is generally harmless error for an ALJ not to expressly address a claimant's obesity if he arrives at a final determination through a review of physicians' opinions that were made when the physician was aware of such a condition. Id. While Plaintiff discussed her limitations, she failed to address the impact of her weight on those limitations and only mentioned her weight when the ALJ specifically inquired about it. (Tr. 35.) Furthermore, a plaintiff's speculation as to the impact of weight on the ability to stand and walk is not enough to establish a disability. See Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 2004) (ALJ's failure to expressly consider obesity in determination was harmless error as plaintiff failed to specify how obesity impaired his ability to work).

Finally, the ALJ determined Plaintiff's testimony regarding her condition and physical limitations was not entirely credible. While discussing her physical limitations, Plaintiff testified: "I'm lucky to stand five minutes when I can stand. And when I sit or lay, I can only do so anywhere from 10 minutes to 20 minutes at a time." (Tr. 52.) She further stated that she runs out of breath from walking to the sink and with her condition is "lucky to get two hours of sleep." (Tr. 47.) The ALJ found Plaintiff's testimony, as well as the described extreme degree of limitation, was not supported by the medical record. Specifically, there were no medically placed restrictions on her activities or any notation that she was unable to bathe or do any household chore without assistance. Furthermore, the ALJ stated it was "not probable that she could survive on only two hours of sleep for an extended period," [Doc. 12 at 8] and also observed that during the fifty-five minute hearing, Plaintiff was able to interact appropriately, maintain concentration and pace, and sit the entire time without a problem. [Doc. 12 at 6.] These credibility determinations were reasonable, based on the medical record, and properly

summarized a sound basis for finding that Plaintiff was more the willing to exaggerate her physical limitations.

**2.  Plaintiff's Residual Functioning Capacity**

Second, Plaintiff argues that the ALJ's findings regarding the severity of her physical limitations and RFC lack medical support and are not supported by substantial evidence. Plaintiff asserts the ALJ failed to rely on *any* opinion evidence in the record when he made his physical and mental RFC findings. [Doc. 15 at 16.]  Plaintiff disputes the ALJ's contention that Plaintiff's right leg is not severely impaired, her depression is not severe, and she is capable of standing most of a regular work day. Plaintiff also argues the ALJ's contentions are not supported by substantial evidence.  However, a review of the record reveals that there is a substantial basis for the ALJ's finding that Plaintiff's RFC enables her to work at a light exertion level.

Plaintiff claims the ALJ did not have substantial evidence to conclude that her right leg was not severely impaired.  However, the ALJ noted that there is no documentation of a broken right knee and the sole evidence regarding Plaintiff's leg impairment was Dr. Rabinowitz's report.  The report only stated that the limitation of Plaintiff's range of motion was "mild" and there was no "evidence of active joint inflammation, joint deformity, instability, contracture, or paravertebral muscle spasm."  (Tr. 226.)  Dr. Rabinowitz noted Plaintiff needed no assistance walking distances of fifty feet, though she did walk with an antalgic gait.  Plaintiff does not discount this finding and merely claims this is insufficient evidence for the ALJ to find she did not have a severe right knee impairment.

The ALJ also relied on Dr. Wang's opinion, who was unsure why Plaintiff was applying for disability.  Controlling weight should be given to medical profession sources if those sources

are supported by medically acceptable clinical techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927 (d)(2)(2006). Plaintiff argues Dr. Wang's testimony is not substantial evidence since he had not seen Plaintiff "since January 12, 2005, nearly a year and half prior to her hearing." [Doc. 15 at 18 (citing Tr. 222).] However, 20 C.F.R. § 416.912 (a) requires a claimant to prove disability based on furnished medical evidence, so the burden is on the claimant to make an affirmative showing.

Furthermore, Plaintiff asserts that the ALJ's reliance on the State agency evaluator report, in addition to those of Dr. Wang and Dr. Rabinowitz, failed to sufficiently address her impaired right leg . Plaintiff correctly states that the ALJ granted little weight to the evaluator's opinion, who determined Plaintiff could lift 25 to 50 lbs., and stand or walk 6 hours in an 8-hour day. (Tr. 229.) However, in doing so, the ALJ determined Plaintiff was *more* limited than what the State Agency evaluator had concluded. The ALJ specifically stated "[t]he undersigned has granted the claimant the benefit of every reasonable doubt in considering that she is further restricted to work activity at a light exertion level with additional limitations." (Tr. 20.) Plaintiff has the burden to prove with medical testimony her physical impairment and consequential disability and here, failed to supplement the record. Therefore, this Court finds it was reasonable for the ALJ to rely on the available medical record.

Plaintiff also asserts that the ALJ's finding as to the severity of her limitations was not supported by substantial evidence. The ALJ noted that although her impairments could reasonably be expected to produce the alleged symptoms, "claimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." (Tr. 19.) As discussed *supra*, the ALJ's credibility determinations are given deference as long as they are supported by specific reasoning. Here, the ALJ specifically stated that Plaintiff's testimony was

12

not likely credible and the record did not support Plaintiff's history of medical care proffered by Dr. Hassan.  See (R. at 528.)

Finally, this Court is unpersuaded by Plaintiff's contention that she is depressed and the ALJ should have relied on a functional assessment in determining her mental limitations. Plaintiff provided no psychological reports of functioning or treatment which would have aided the ALJ, nor did Plaintiff point to any objective evidence of specific functional limitations related to her mental impairments.  Plaintiff was referred to a psychologist by Dr. Hassan, but she failed to follow through with the treatment (Tr. 503); furthermore, Dr. Rabinowitz evaluated Plaintiff's mental status and found her functioning to be intact.  (Tr. 226.)  Nothing in the record suggests that Plaintiff is depressed and the ALJ reasonably concluded that Plaintiff retained the mental functional capacity to perform simple, routine tasks.  (Tr. 18.)

### 3.  Plaintiff's Non-Compliance

Plaintiff claims the ALJ erred by raising the issue of her non-compliance with her prescribed treatment.  Were Plaintiff's non-compliance the sole factor for the ALJ's decision, Plaintiff's argument might be persuasive.  However, the ALJ's decision did not rest entirely on Plaintiff's non-compliance with her prescribed treatment; rather it was based on Plaintiff's failure to demonstrate a disability in medical record.  The ALJ focused on Dr. Wang's opinion, who stated that Plaintiff seemed reasonably functional and was "not really sure why she is applying for disability."  (Tr. 222.)  For example, the ALJ's note that Plaintiff was non-compliant was simply an observation that Plaintiff was partially responsible for exacerbating her condition and did not form the basis for the ALJ's findings.  Furthermore, noting this observation did not change the fact that there still remains substantial evidence in the record to support the ALJ's ultimate decision.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

CASE TERMINATED.

ENTERED this __17th__ day of July, 2008

s/Joe Billy McDade
Joe Billy McDade
United States District Judge
